[Cite as *Centerville v. Knab*, 2019-Ohio-1903.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| CITY OF CENTERVILLE | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28081 |
| | : | |
| v. | : | Trial Court Case No. 2018-CRB-642 |
| | : | |
| MICHAEL P. KNAB | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of May, 2019.

. . . . . . . . . . .

JOHN D. EVERETT, Atty. Reg. No. 0069911, Prosecuting Attorney, City of Kettering, 2325 Wilmington Pike, Kettering, Ohio 45420
          Attorney for Plaintiff-Appellee

PATRICK T. CLARK, Atty. Reg. No. 0094087, Assistant State of Ohio Public Defender, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215
          Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-appellant, Michael P. Knab, appeals from his conviction and sentence in the Kettering Municipal Court for one count of making a false report to a law enforcement agency and one count of improper use of a 9-1-1 system. In support of his appeal, Knab claims that there was insufficient evidence to support his conviction for both offenses. Knab also contends that the trial court erred in ordering him to pay restitution to the Centerville Police Department and that the sentence imposed for improper use of a 9-1-1 system exceeded the authorized maximum jail term and fine available for a fourth-degree misdemeanor. For the reasons outlined below, the portion of Knab's sentence ordering him to pay restitution to the Centerville Police Department will be vacated. Knab's conviction for improper use of a 9-1-1 system will be reversed, and the matter will be remanded for resentencing only on that count. In all other respects, the judgment of the trial court finding will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On April 4, 2018, Knab was charged by complaint in the Kettering Municipal Court for one count of making a false report to a law enforcement agency in violation of R.C. 2917.32(A)(3), a misdemeanor of the first degree, and one count of improper use of a 9-1-1 system in violation of R.C. 128.32(E), a misdemeanor of the fourth degree. The charges arose after Knab called 9-1-1 and reported to a Centerville Police Department dispatcher that there was an active shooter at his residence and that someone had been shot. After several officers from the Centerville Police Department responded to Knab's residence, Knab's mother, Yvonne Knab, and Knab's friend, David Carter, advised the

officers that there was no active shooter or injured person present. A subsequent search of the residence confirmed that there was no firearm on the property and that there were no bullet holes or injuries.

{¶ 3} Knab pled not guilty to the charged offenses and the matter proceeded to a bench trial. At trial, the State presented testimony from Carter, the dispatcher who received Knab's 9-1-1 call, and three of the police officers who responded to the scene. Knab's mother also testified in her son's defense. The following is a summary of the testimony and evidence presented during trial.

{¶ 4} Carter, a childhood friend of Knab who had been temporarily residing at Knab's residence, testified that on the morning in question, Knab came upstairs from his basement bedroom saying "[they] were under attack" and "people were coming to get us." Trans. p. 18. Carter testified that Knab then shoved him out of the residence and locked the door while saying "[he] was with the bad guys." *Id.* Carter testified that he assumed Knab was on methamphetamine because Knab had been in the basement with a female who was a known methamphetamine user. Carter also claimed that Knab had mild schizophrenia.

{¶ 5} Mary Carol Salmon, the dispatcher who received Knab's 9-1-1 call, testified that Knab reported someone "shooting up" his residence. *Id.* at 10. Salmon also testified that Knab reported someone being shot. The recorded 9-1-1 call confirmed Salmon's testimony and was admitted into evidence.

{¶ 6} Officer Bryan Sears testified that he was dispatched to Knab's residence. Sears testified that he spoke to Carter, who was standing outside the residence when he arrived. According to Sears, Carter informed him that there were no guns in Knab's

residence and no shooting victims. Sears testified that Carter indicated Knab was running throughout the house with a machete because Knab thought people were trying to shoot him. Sears also testified that Carter told him that Knab had been smoking methamphetamine and was hallucinating.

{¶ 7} After speaking with Carter, Officer Sears spoke with Knab's mother. Sears testified that Knab's mother informed him that her son had accused Carter of having a gun and told her there were other people in the house with guns. Knab's mother also informed Sears that Knab had grabbed a meat cleaver and forced Carter out of the house. Sears further testified that Knab's mother informed him that she had told Knab no one in the house had any guns, but that Knab did not believe her because he was hallucinating.

{¶ 8} Officer Faupo Lauofo also responded to Knab's residence. Lauofo testified that he interviewed Knab after the incident. According to Lauofo, Knab informed him that Carter was acting funny that morning, and that when Knab brushed his hand up against Carter's chest, Knab thought he felt the butt of a firearm. Knab told Lauofo that he felt threatened by Carter and pushed Carter out of the house. Knab also told Lauofo that once he got Carter out of the house, Knab thought he saw Carter pointing a gun at him, which prompted him to call 9-1-1 shortly thereafter.

{¶ 9} Continuing, Lauofo testified that Knab told him no one else in the house was concerned about there being a shooter. Knab also told Lauofo that his mother kept telling him to "stop, stop, stop" even though he was telling her that Carter had a gun. Trans. p. 45. Lauofo further testified that Knab denied being on any kind of narcotics.

{¶ 10} Sergeant James Myers also responded to Knab's residence and spoke to Carter. Myers testified that Carter told him no one was shot and that Knab had been

smoking methamphetamine and was hallucinating. Myers indicated that he had had contact with Knab over the years on different complaints and that he was aware of the fact that Knab had a drug issue. Myers, however, did not know Knab to have a mental health problem.

**{¶ 11}** In addition, Myers testified to obtaining a search warrant for Knab's residence. Myers indicated that the search yielded a meat cleaver, aluminum baseball bat, machete, miscellaneous drug paraphernalia, hypodermic syringes, and unknown pills. Officer Sears, who assisted with the search, also testified to finding ammunition; however, Sears confirmed that there were no firearms discovered in the residence. Myers also confirmed that no blood, bullet holes, or shooting victims were discovered in the residence.

**{¶ 12}** Knab's mother testified in Knab's defense and claimed that Knab had been hallucinating and truly believed that someone had a gun. Knab's mother recalled Knab telling her not to go downstairs because there were people with guns, but she did not recall Knab ever saying that anyone had been shot. Knab's mother confirmed that she had repeatedly told Knab that no one in the house had a gun. She also confirmed that Knab had a history of drug use. When asked whether Knab had a history of mental illness, Knab's mother testified that Knab had told her that he was diagnosed with schizophrenia, but that she did not think he actually suffered from the disease.

**{¶ 13}** Following the presentation of testimony and evidence, the trial court found Knab guilty as charged. For each offense, the trial court sentenced Knab to 180 days in jail with 90 days suspended, ordered Knab to pay a $500 fine with $475 suspended, and placed Knab on three years of probation, all to be served concurrently. The trial court

then held a restitution hearing. During this hearing, the State presented evidence establishing that the officers' time spent responding to Knab's 9-1-1 call cost the Centerville Police Department $1,375.56 in hourly wages. Following the restitution hearing, the trial court ordered Knab to pay restitution in the amount of $1,375.56 to the Centerville Police Department.

{¶ 14} Knab now appeals from his conviction and sentence, raising four assignments of error for review.

**First Assignment of Error**

{¶ 15} Under his first assignment of error, Knab contends that the State did not present sufficient evidence to sustain his conviction for making a false report to a law enforcement agency and improper use of a 9-1-1 system. In support of this claim, Knab argues that the State failed to provide evidence establishing that he knew his report of an active shooter and injured person at his residence was false. We disagree.

{¶ 16} A sufficiency of the evidence argument challenges whether the State presented adequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing whether the State has presented sufficient evidence to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

**{¶ 17}** As previously noted, Knab was found guilty of making a false report to a law enforcement agency in violation of R.C. 2917.32(A)(3). Pursuant to that statute: "No person shall * * * [r]eport to any law enforcement agency an alleged offense or other incident within its concern, knowing that such offense did not occur." R.C. 2917.32(A)(3). Knab was also found guilty of improper use of a 9-1-1 system in violation of R.C. 128.32(E). That statute prohibits any person from "knowingly us[ing] the telephone number of a 9-1-1- system * * * to report an emergency if the person knows that no emergency exists." R.C. 128.32(E).

**{¶ 18}** Both of the aforementioned offenses require the offender to have acted knowingly. Specifically, Knab must have known that the incident he was reporting to authorities did not occur and that no emergency existed. This is the only element of the two offenses that Knab is contesting on appeal, as he does not dispute the fact that he called 9-1-1 and reported an active shooter emergency and injury to a Centerville police dispatcher.

**{¶ 19}** As explained in R.C. 2901.22(B):

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶ 20} Upon reviewing the testimony and evidence presented at trial, we find that there was sufficient evidence in the record for the trial court to find that Knab had knowledge of the fact that there was no active shooter emergency or injured person at his residence when he contacted 9-1-1. The testimony of Knab's mother and Officer Sears established that Knab's mother repeatedly told Knab that there was no one in the house with a gun. Also, none of the witnesses testified to hearing any gunfire or seeing any injuries at Knab's residence. Sergeant Myers specifically testified that upon executing a search warrant for Knab's residence, no bullet holes, blood, or injured victims were discovered in the residence. Officer Sears also confirmed that no firearms were discovered in the residence. The testimony of Knab's mother, David Carter, and Officer Lauofo further established that Knab was walking throughout the residence, thereby indicating that Knab had the ability to see that there was no active shooter or injured person present.

{¶ 21} All of the foregoing testimony, when viewed in a light most favorable to the State, indicates that Knab had knowledge of the fact that there was no gun, no shooter, and no injured person at his residence. Although there is testimony in the record indicating that Knab was hallucinating during the incident and truly believed there was an active shooter, "[a]s the trier of fact, the trial court 'was free to believe all, part, or none of the testimony of each witness and to draw reasonable inferences from the evidence presented.' " *State v. Gipp*, 2d Dist. Montgomery No. 27635, 2017-Ohio-8907, ¶ 14, quoting *State v. Fields*, 2d Dist. Clark No. 2016-CA-76, 2017-Ohio-7745, ¶ 42, citing *State v. Baker*, 2d Dist. Montgomery No. 25828, 2014-Ohio-3163, ¶ 28.

{¶ 22} Here, the trial court chose to believe the evidence that established Knab

had knowledge of the circumstances as they existed. That is to say, the trial court determined that Knab had knowledge of the fact that there was no gun, no shooter, and no injured person when he called 9-1-1. Although it is not directly pertinent to Knab's sufficiency argument, given the profuse amount of testimony indicating that Knab was on drugs, we note the general rule that voluntary intoxication is not a defense to any crime. *State v. Arnold*, 2013-Ohio-5336, 2 N.E.3d 1009, ¶ 78 (2d Dist.). Regardless of that fact, based on the circumstances here, Knab's claim that there was insufficient evidence to support his conviction for making a false report and improper use of a 9-1-1 system lacks merit.

{¶ 23} Knab's first assignment of error is overruled.

## Second and Third Assignments of Error

{¶ 24} Under his second and third assignments of error, Knab challenges the trial court's restitution order. Knab contends that the trial court's order for him to pay restitution to the Centerville Police Department was inappropriate because a police department is not a "victim" to whom restitution may be ordered under R.C. 2929.28(A)(1). Knab also argues that even if this court were to find that the Centerville Police Department was a victim in this case, the restitution order would still be improper because nothing in the record suggests that the police department suffered any economic loss as a result of his offense. We agree.

{¶ 25} "Generally, a trial court's order of restitution is reviewed for an abuse of discretion." *State v. Hunter*, 2d Dist. Montgomery No. 25521, 2013-Ohio-3759, ¶ 7, citing *State v. Johnson*, 2d Dist. Montgomery No. 24288, 2012-Ohio-1230, ¶ 11. "However,

we utilize a de novo standard of review when determining to whom restitution may appropriately be awarded." *Id.*, citing *Johnson* at ¶ 11. A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination. *State v. Clay*, 2d Dist. Miami No. 2015-CA-17, 2016-Ohio-424, ¶ 5.

{¶ 26} Pursuant to R.C. 2929.28(A)(1), a trial court may order restitution "to the victim of the offender's crime * * * in an amount based on the victim's economic loss." R.C. 2929.28 does not define the term "victim." However, the definition of "victim" in "R.C. 2930.01(H)(1) is useful in understanding the legislature's intent, although it is not explicitly controlling for matters other than those in Chapter 2930." *State v. Christian*, 2d Dist. Montgomery No. 25256, 2014-Ohio-2672, ¶ 107, *vacated on other grounds*, 143 Ohio St.3d 417, 2015-Ohio-3374, 38 N.E.3d 888, citing *State v. Ritchie*, 174 Ohio App.3d 582, 2007-Ohio-6577, 883 N.E.2d 1092, ¶ 23 (5th Dist.).

{¶ 27} Under R.C. 2930.01(H)(1), the term "victim" means "[a] person who is identified as the victim of a crime or specified delinquent act in a police report or in a complaint, indictment, or information that charges the commission of a crime and that provides the basis for the criminal prosecution or delinquency proceeding and subsequent proceedings * * *." Black's Law Dictionary also defines "victim" as the "person who is the object of a crime or tort, as the victim of a robbery is the person robbed." *Black's Law Dictionary* 1567 (6th Ed.1990). *See also Johnson*, 2d Dist. Montgomery No. 24288, 2012-Ohio-1230, at ¶ 10*; Christian* at ¶ 108.

{¶ 28} Based on the definitions outlined above, this court has held that "governmental agencies generally do not constitute 'victims' entitled to restitution for their efforts to fight crime or fires using public funds, but that certain exceptions exist such as

embezzlement of public funds or vandalism or destruction of governmental property." *State v. Turner*, 2d Dist. Champaign No. 2017-CA-15, 2018-Ohio-2860, ¶ 14, citing *Christian* at ¶ 126. Therefore, the general rule is "that governmental agencies are not victims of crimes to which they respond in their official capacities[.]" *Turner* at ¶ 15.

**{¶ 29}** In *Christian*, 2d Dist. Montgomery No. 25256, 2014-Ohio-2672, we explained that:

Without specific expression of such an intent, we cannot conclude that the legislature intended to make law enforcement or other governmental agencies, whose only involvement in the reported crime is their response to it in their official capacities, eligible for restitution. We agree with the Eleventh District in [*State v. Pietrangelo*, 11th Dist. Lake No. 2003-L-125, 2005-Ohio-1686]: "Although we acknowledge the State's legitimate interest and entitlement, in certain cases, to defray the spiraling costs of criminal investigation on behalf of the taxpayer, * * * *absent an express statement from the legislature authorizing the trial courts to sentence criminal defendants to pay restitution to law enforcement agencies for this purpose, we should not, as an appellate court, take it upon ourselves to judicially rewrite the statute.*" *Pietrangelo* at ¶ 17.

(Emphasis added.) *Christian* at ¶ 128.

**{¶ 30}** Despite our holding in *Christian*, the State contends that the legislature's recent amendment to the Ohio Constitution at Article I, Section 10(a), known as Marsy's Law, expanded the definition of "victim" to include law enforcement agencies. Specifically, the State points to provision (D) of Marsy's Law, which states that the term

" 'victim' means a person against whom the criminal offense or delinquent act is committed or who is directly and proximately harmed by the commission of the offense or act."

**{¶ 31}** Although we agree that Marsy's Law does expand the meaning of the term "victim," we do not find that it expressly authorizes sentencing courts to characterize law enforcement agencies as victims who are entitled to restitution due to their efforts in carrying out their official duties. As noted in *Christian*, absent such express language, it is not the role of this court to rewrite the statute to provide for such a result. Therefore, awarding restitution to the Centerville Police Department was erroneous since it is not a "victim" under R.C. 2929.28(A)(1).

**{¶ 32}** The trial court's decision to award restitution to the Centerville Police Department was also erroneous because there was no evidence of any economic loss as a result of Knab's offenses. In arguing to the contrary, the State cites the definition of "economic harm" provided in R.C. 2917.32(E) and R.C. 2917.31(E)(1)(b). Under those statutory provisions, "economic harm" includes "[a]ll costs incurred by the state or any political subdivision as a result of, or in making any response to, the criminal conduct that constituted the violation * * *, including, but not limited to, all costs so incurred by any law enforcement officers, firefighters, rescue personnel, or emergency medical services personnel of the state or the political subdivision." R.C. 2917.31(E)(1)(b).

**{¶ 33}** There is, however, a distinction between "economic harm" as used in R.C. 2917.32(E) and "economic loss" as used in R.C. 2929.28(A)(1). Although the amount of "economic harm" that arises from the offense of making a false report is relevant in determining the degree of that offense, *see* R.C. 2917.32(C), pursuant to R.C.

2929.28(A)(1), restitution is based on "the victim's economic loss."  The term "economic loss" is defined in R.C. 2929.01(L) as "any economic detriment suffered by a victim *as a direct and proximate result of the commission of an offense* and includes any loss of income due to lost time at work because of any injury caused to the victim, and any property loss, medical cost, or funeral expense incurred as a result of the commission of the offense."  (Emphasis added.)

{¶ 34} In this case, the restitution awarded to the Centerville Police Department reflected the total amount of regular-hourly wages paid to Centerville police officers for their time spent responding to and investigating Knab's false report.  This does not constitute an "economic loss" because the Centerville Police Department is not a "victim" and because the record indicates that each officer who responded to Knab's false report was already on duty and would have been paid their regular hourly rate regardless of Knab's actions.  In other words, the officers' wages did not constitute an economic detriment that was paid as a direct and proximate result of Knab's offense.  Awarding restitution for those wages was therefore improper.

{¶ 35} Knab's second and third assignments of error are sustained.

**Fourth Assignment of Error**

{¶ 36} Under his fourth assignment of error, Knab challenges the sentence imposed for the fourth-degree-misdemeanor offense of improper use of a 9-1-1 system. Specifically, Knab contends that the sentence imposed by the trial court exceeds the authorized maximum jail term and fine for a fourth-degree misdemeanor.  The State concedes error in that regard.  Upon review, we agree that the sentence at issue

exceeds the maximum jail term and fine that is available for a fourth-degree misdemeanor.

{¶ 37} Under Ohio law, a misdemeanor of the fourth degree may be punished by not more than 30 days in jail and by a fine of not more than $250. R.C. 2929.24(A)(4); R.C. 2929.28(A)(2)(a)(iv). In this case, when sentencing Knab for improper use of a 9-1-1 system, a fourth-degree misdemeanor, the trial court imposed 180 days in jail with 90 days suspended. The trial court also ordered Knab to pay a $500 fine with $475 suspended. Therefore, when considering the punishment available for fourth-degree misdemeanor offenses, the trial court's sentencing decision was unlawful since it imposed a jail term and fine that were not within the authorized statutory range.

{¶ 38} Knab's fourth assignment of error is sustained.

**Conclusion**

{¶ 39} Having sustained Knab's second and third assignments of error, the portion of Knab's sentence requiring him to pay restitution to the Centerville Police Department is vacated. Furthermore, having sustained Knab's fourth assignment of error, his conviction for the offense of improper use of a 9-1-1 system is reversed, and the matter is remanded to the trial court for resentencing on that count. In all other respects, the trial court's judgment is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

John D. Everett
Patrick T. Clark
Hon. James F. Long