[Cite as *State v. Brown*, 2020-Ohio-3052.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28473 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-822 |
| | : | |
| HENRY L.　BROWN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of May, 2020.

. . . . . . . . . . .

MATHIAS H. HECK JR. by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
  Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P.O. Box 340214, Beavercreek, Ohio 45434
  Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Henry L. Brown appeals from his convictions based on guilty pleas for aggravated robbery, having weapons while under disability, and failure to comply with an order or signal of a police officer. He argues that he did not enter the guilty pleas knowingly, intelligently, and voluntarily. In addition, Brown argues that he should not have been ordered to pay restitution at all or to the Montgomery County Sheriff's Office in particular. We see no merit in any of these arguments, and we affirm.

## I. Factual and Procedural Background

{¶ 2} On February 27, 2019, Brown entered First Financial Bank on 2891 W. Alex Bell Road with a gun and demanded money. Bank employees gave him a bag containing $2,100 and a GPS tracking device. When police tracked down Brown, he fled and led them on a high-speed chase, during which Brown crossed double yellow lines and ran red lights. Finally, the pursuing officer performed a maneuver with his cruiser to strike the side of Brown's car, causing his car to spin and ultimately come to a stop in the middle of an intersection. Officers recovered $2,039.01. Brown said that he owed money for drugs.

{¶ 3} Brown was indicted on three counts of aggravated robbery under R.C. 2911.01(A)(1), each a first-degree felony and each accompanied by a firearm specification; one count of having weapons while under disability under R.C. 2923.13(A)(2), a third-degree felony; and one count of failure to comply with order or signal of police officer under R.C. 2921.331(B) and (C), a fifth-degree felony. In May 2019, under a plea agreement, the state dismissed two firearm specifications, and Brown pleaded guilty to the remaining charges. The trial court sentenced him to a total of 10 years in prison and suspended Brown's driver's license for three years. The court waived

payment of court costs but ordered Brown to pay restitution for economic loss of $60.99 to the bank and $1,067.48 to the Montgomery County Sheriff's Office.

{¶ 4} Brown appeals.

## II. Analysis

{¶ 5} Brown argues that he did not enter his guilty pleas knowingly, intelligently, and voluntarily and that he should not have to pay restitution at all or to the Montgomery County Sheriff's Office in particular.

## A. Guilty pleas

{¶ 6} The first assignment of error alleges:

BROWN'S PLEAS WERE NOT MADE KNOWINGLY, INTELLIGENTLY,

AND VOLUNTARILY.

Brown argues that he did not make his guilty pleas knowingly, intelligently, and voluntarily, and that the trial court failed to comply with Crim.R. 11, because the court did not properly inform him that he faced a mandatory driver's license suspension.

{¶ 7} We question how Brown can say that he didn't know about the license suspension, given what we see in the record. The plea form—which Brown signed—states: "I understand that for violations of Community Control sanctions, I can be required to serve a prison term of up to ____; and **permanent revocation or suspension of my Driver's License** for not less than 3 years and not more than Life." The bolded text is bolded on the form, and "3 years" and "Life" are handwritten.

{¶ 8} At the plea hearing, after defense counsel stated the terms of the plea agreement, the trial court asked the state whether it agreed:

[PROSECUTOR]: * * * One hundred percent. And as I'm sure the Court will discuss in the colloquy, there's the driver's license suspension on the failure to comply, but that's three years to life, so that's kind of academic here, but just to make sure that's tucked in there.

[DEFENSE COUNSEL]: Would the Court be in agreement with allowing that driver license suspension to, I guess, run while Henry's serving time?

THE COURT: Yes.

[DEFENSE COUNSEL]: Thank you, Your Honor.

THE COURT: Mr. Brown, have you heard the terms of the plea agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you agree with that?

THE DEFENDANT: Yes, sir.

(Tr. 108-109.)

{¶ 9} Later, during the plea colloquy, the trial court forgot at first to mention the license suspension, but the court remembered before accepting Brown's plea:

THE COURT: Hold on just a minute. Before I—before you sign on the guilty plea to the failure to comply.

THE DEFENDANT: Yes, sir.

THE COURT: That carries with it a driver's license suspension, and I did not—we've talked about it, but I don't think I fully advised you. You understand that an additional penalty for the failure to comply is a driver's

license—your driver's license could be suspended, minimum three years, maximum life. Do you understand that possible penalty?

THE DEFENDANT: Yes.

\* \* \*

THE COURT: Okay. All right. So with that, understanding that, do you still plead guilty as you indicated before?

THE DEFENDANT: Okay, I just, I have one question, like. Okay, the driver's license, it was also stated, though, that they would, during the time I'm serving—

THE COURT: Part of the plea agreement is that the Court will order some driver's license suspension as a sanction but will order that be served, or that start to run immediately—

THE DEFENDANT: Okay.

THE COURT: —from the time of your—

THE DEFENDANT: Yeah. That's what I was wondering about.

THE COURT: —the determination entry [sic] goes on in four weeks or so.

THE DEFENDANT: Um-hum.

[DEFENSE COUNSEL]: And that time will run while he's serving time?

THE DEFENDANT: Yeah. That's what he just said. Yeah.

THE COURT: Yes.

(Tr. 120-122.)

{¶ 10} Brown's license suspension was referenced in the plea form and was referred to in the terms of the plea agreement; he also indicated at the plea hearing his understanding that it would be a penalty and showed his understanding by asking a question about it. Brown fails to explain why all of this was inadequate to inform him that his license would be suspended. He also does not explain what difference the suspension made to his decision. Seven years of Brown's ten-year prison term were mandatory. The license suspension was only 3 years and began immediately,[1] which meant that the suspension would end well before Brown would need a driver's license. We see no error.

{¶ 11} The first assignment of error is overruled.

### B. Restitution

{¶ 12} The second assignment of error alleges:

THE TRIAL COURT ERRED WHEN IT ORDERED BROWN TO PAY RESTITUTION.

Brown argues that the trial court abused its discretion by ordering Brown to pay restitution. He also argues that the court erred by ordering him to pay any restitution to the Montgomery County Sheriff's Office.

{¶ 13} A trial court may order an offender to pay restitution to "the victim of the offender's crime" for "economic loss." R.C. 2929.18(A)(1). "Generally, a trial court's order of restitution is reviewed for an abuse of discretion." *State v. Hunter*, 2d Dist. Montgomery No. 25521, 2013-Ohio-3759, ¶ 7, citing *State v. Johnson*, 2d Dist. Montgomery No. 24288, 2012-Ohio-1230, ¶ 11. But "we utilize a de novo standard of review when determining to whom restitution may appropriately be awarded." *Id.* at ¶ 7, citing *Johnson* at ¶ 11.

---

[1] *See* Sentencing Tr. 13.)

{¶ 14} Brown argues that he should not have to pay restitution, because of his age, his health, and the length of his prison sentence. At the time of his sentencing, Brown was 57 years old and confined to a wheelchair because he suffered from deep vein thrombosis. The trial court recognized that he suffered from the condition, noting that, according to the presentence investigation report (PSI), Brown was diagnosed with thrombosis in 2003 and the condition had required hospitalization on multiple occasions, most recently in 2015. But the court also noted that the PSI indicated that, since his diagnosis, Brown had been employed for lengthy periods of time. The court found that there was no reason he would be unable to work during his time in prison. The court also found that, based on his education and work experience, though his ability to pay "will be severely limited at first, there's at least a future ability to pay, and the amounts [of restitution] are not particularly great." (Tr. 132). Brown fails to convince us that the trial court's decision to order restitution was unreasonable.

{¶ 15} Brown also argues that the Montgomery County Sheriff's Office was not a "victim" for purposes of the restitution statute, R.C. 2929.18. But in a case like this, the law permits the trial court to order restitution to the Sheriff. "[G]overnmental agencies generally do not constitute 'victims' entitled to restitution for their efforts to fight crime or fires using public funds, but * * * certain exceptions exist, such as embezzlement of public funds or vandalism or destruction of governmental property." *State v. Turner*, 2d Dist. Champaign No. 2017-CA-15, 2018-Ohio-2860, ¶ 14, citing *State v. Christian*, 2d Dist. Montgomery No. 25256, 2014-Ohio-2672, ¶ 126. In *Turner*, we held that the Ohio State Highway Patrol could be a "victim" entitled to restitution, where the defendant fled a traffic stop and crashed his car into a cruiser. *Id.* at ¶ 17.

**{¶ 16}** The case on which Brown relies, *City of Centerville v. Knab,* 2d Dist. Montgomery No. 28081, 2019-Ohio-1903, is distinguishable. Although we held in *Knab* that it was improper for the trial court to order restitution to the police department, because government agencies are not victims of crimes to which they respond in their official capacities, none of the exceptions to this general rule applied or were even at issue in that case.

**{¶ 17}** According to the PSI, the Montgomery County Sheriff's Office provided invoices totaling $1,067.48 for the repairs that had to be done to the cruiser that was damaged as a result of Brown's flight from law enforcement. We see no error in the trial court's decision ordering restitution to the Sheriff's Office.

**{¶ 18}** The second assignment of error is overruled.

### III. Conclusion

**{¶ 19}** We have overruled both of the assignments of error presented. The trial court's judgment is affirmed.

. . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck Jr.
Sarah E. Hutnik
Robert Alan Brenner
Hon. Timothy N. O'Connell